UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANIEL WEAVER,

                    Petitioner,                           Case No. 1:19-cv-127

v.                                                        Honorable Janet T. Neff

JOHN CHRISTIANSEN,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Petitioner Daniel Weaver is incarcerated with the Michigan Department of Corrections at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan.  Petitioner is serving sentences imposed in two separate cases from the Newaygo County Circuit Court.  In Case No. 15-010994 (herein the drunk driving case), Petitioner initially entered a plea of guilty to a charge of third-offense operating a motor vehicle while impaired (OWI-3rd) on July 29, 2015.  On August 26, 2015, in Case No. 15-011046 (herein the fleeing and eluding case), a jury found Petitioner guilty of operating a motor vehicle without a valid license, Mich. Comp. Laws § 257.904(3)(b), third-degree fleeing and eluding,  Mich. Comp. Laws  § 257.602a(3),  and  resisting  and  obstructing  a  police  officer, Mich. Comp. Laws § 750.81d(1).

On October 13, 2015, the court sentenced Petitioner to 2 to 5 years imprisonment in the drunk driving case.  On the same date, in the fleeing and eluding case, the court sentenced Petitioner, as a habitual offender-fourth offense, to 46 months to 40 years for fleeing and eluding, 46 months to 15 years for resisting and obstructing, and one year for driving without a license.  Because Petitioner

had committed the fleeing and eluding offenses while he was out on bond for the drunk driving, the court ordered the fleeing and eluding sentences to be served consecutively to the drunk driving sentence.  (ECF No. 25-10, PageID.681-684.)

Several months later, Petitioner was permitted to withdraw his plea in the drunk driving case because the trial court had failed to inform him of the maximum penalty.  (ECF No. 25-11, PageID.690-1.)  On August 22, 2016, Petitioner proceeded to a bench trial on the drunk driving charge.  The judge found Petitioner guilty.  (ECF No. 25-15, PageID.808-813.)  On October 11, 2016, sentenced Petitioner to 6 to 18 years' imprisonment.  (ECF No. 25-18, PageID.21-22.)

Petitioner appealed the fleeing and eluding judgment of conviction to the Michigan Court of Appeals.  The court of appeals affirmed the trial court by unpublished opinion issued February 21, 2017.  (Mich. Ct. App. Op., ECF No. 25-19, PageID.898-908.)  Petitioner's application for leave to appeal in the Michigan Supreme Court was denied on September 12, 2017.  (Mich. Order, ECF No. 25-20. PageID.1245.)

As Petitioner's appeal in the fleeing and eluding case progressed through the appellate courts, Petitioner also appealed the judgment of conviction entered in the drunk driving case.  By unpublished opinion issued February 6, 2018, the Michigan Court of Appeals affirmed the trial court. (Mich. Ct. App. Op., ECF No. 25-21, PageID.1412-1424.)  Petitioner sought leave to appeal in the Michigan Supreme Court, which denied leave on September 12, 2018.  (Mich. Order, ECF No. 25-22, PageID.1655.)

This is Petitioner's second habeas petition relating to these convictions.  The first petition, *Weaver v. Harry*, No. 1:17-cv-963 (W.D. Mich.), was dismissed for lack of exhaustion on November 21, 2017.  Petitioner returns to the Court having exhausted his claims.  On October 22, 2018, Petitioner filed the instant habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295

2

F.3d 517, 521 (6th Cir. 2002).  Petitioner placed his petition in the prison mailing system on October

17, 2018.  (Pet., ECF No. 1-1, PageID.200.)

The petition raises several grounds for relief, as follows:

I.     Petitioner's 5th and 14th Amendment rights were violated by the trial court when Judge Monton arbitrarily "canceled" one bond, and revoked another already-posted bond without a hearing.  His actions were contrary to Section 17 of the Michigan Constitution, Michigan law, and court rules.  Judge Monton thereafter kept Petitioner imprisoned unlawfully, denying me my liberty pending trial, my rights to due process of law, and caused irreparable harm, thereby, he forever denied me any chance of a fair trial.

II.    Petitioner's 6th Amendment right to the assistance of counsel was violated when his appointed attorney, Melissa Dykman, colluded with other court officials, conspired to inflict mental and physical duress in order to force or coerce Petitioner into a plea deal.  Petitioner's 14th Amendment right to due process was violated when she intentionally sabotaged court proceedings.

III.   Petitioner was denied his constitutional right to a fair criminal proceeding before an impartial and detached arbiter.  Judge Monton was biased toward Petitioner from the beginning and made prejudiced decisions throughout the proceedings.  He knowingly and maliciously abused his discretion repeatedly to deny me my legal and constitutional rights to fair due process of law, and thereby caused irreparable harm.

IV.    Judge Monton constructively denied Petitioner his 6th Amendment right to counsel, and abused his discretion by never giving Petitioner a meaningful hearing to ascertain my complaints before denying me substitution of counsel, thereby forcing Petitioner to represent himself without a valid voluntary waiver of his right to counsel.

V.     Petitioner was denied his 5th Amendment right when the State committed prosecutorial misconduct by impermissibly shifting the burden of proof to him to prove his innocence by using his silence and invocation of his *Miranda* rights against him—to imply to the jury that Petitioner had no alibi and had made one up.

VI.    Petitioner's 14th Amendment rights were violated when Judge Monton abused his judicial discretion and proved himself to be vindictive, punishing me for exercising my constitutional right to trial by punishing Petitioner for exercising his constitutional right to trial.

(Pet'r's Mem. of Law., ECF No.1, PageID.36-37.)

3

Petitioner is adamant that the same issues regarding the improper conduct of his counsel, Ms. Dykman, the prosecutor, and Judge Monton are present in both cases.  Petitioner describes the two cases as "inseparably bound together" and "intentionally intertwined."  He has challenged the constitutionality of both judgments in this single petition.[1]  The two cases proceeded together for pretrial purposes.  Many of the same pretrial transcripts are present in the trial court record of each case.  Nonetheless, some of the issues appear to relate to only one of the two cases.  For example, the impermissible shifting of the burden of proof appears to relate only to the fleeing and eluding case, while the vindictive sentencing issue appears to relate only to the drunk driving case.

In addition to the issues set forth above, Petitioner raises two issues in his memorandum of law that appear to relate to only the drunk driving case:

VII.    Improper denial of a motion to suppress relating to video evidence.

VIII.    Lack of sentence proportionality.

---

[1] Rule 2(e), Rules Governing § 2254 Cases, provides, "A petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court."  Courts applying the rule have concluded that, by implication, a petitioner may seek relief from more than one judgment in one petition if the judgments were rendered by the same court.  *See Hardeman v. Quarterman*, 516 F.3d 272, 276 (5th Cir. 2008) ("We hold that under former Rule 2(d), [petitioner] was permitted, but not required, to challenge his separate convictions in a single § 2254 petition."); *Henderson v. Bunting*, No. 1:14CV2557, 2015 WL 196058, at *1 (N.D. Ohio Jan. 14, 2015) ("[I]t would appear that [petitioner] is not barred from presenting challenges to two separate state convictions in a single petition for habeas corpus.") (citing to *Hardemon*); *Johnson v. Norris*, No. 5:08CV00279 JMM, 2009 WL 88915, at *3 (E.D. Ark. Jan. 12, 2009) (noting that a habeas petitioner is not precluded from challenging more than one conviction in a Section 2254 petition so long as the convictions arise from the same state court); *Davis v. Hofbauer*, No. 05-74048, 2007 WL 496476, at *1 n.1 (E.D. Mich. Feb. 12, 2007) ("Petitioner may properly challenge multiple convictions in one federal habeas petition where, as here, the convictions were entered by the same court."); *but see Tigg v. Colson*, No. 3:13-cv-324, 2013 WL 2285562, at *2 (M.D. Tenn. May 23, 2013) (court concluded petitioner violated Rule 2(e) where he filed one petition challenging two judgments from the same state court); *Gray v. Swarthout*, No. CIV S-10-2463 JAM EFB P, 2011 WL 3875896 (E.D. Cal. Sept. 1, 2011) (concluding that the petitioner's § 2254 petition should be dismissed because it challenged separate judgments from the same county court).

(ECF No. 1-1, PageID.111-115.)  It appears that each of the issues Petitioner asserts have been raised at both levels of the state appellate courts; therefore, they are exhausted.  Moreover, the petition is timely.

Respondent has filed an answer to the petition (ECF No. 26) stating that the grounds should be denied because they lack merit.  In addition, Respondent asserts that Petitioner's prosecutorial misconduct claim is barred by the doctrine of procedural default.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

**A.**            **Factual allegations**

In addressing Petitioner's appeal in his drunk driving case, the Michigan Court of Appeals stated:

> This case arises out of a traffic stop that occurred during the early morning hours of January 16, 2015.  Defendant was stopped by Officer Ryan Dornbos, of the Newaygo Police Department, after Officer Dornbos saw defendant's vehicle improperly turn from the incorrect traffic lane on two occasions within a short span of time.  During the traffic stop, defendant admitted that he did not have a driver's license and that he was too drunk to drive.  Defendant's blood alcohol content was later determined to be .191 grams of alcohol per 100 milliliters of blood.  Defendant was subsequently charged with operating while intoxicated, third offense, and operating a motor vehicle with a suspended license, second offense.

> In a pretrial proceeding, the trial court informed defendant that his bond was being continued to assure his appearance at upcoming hearings.  A few days later, however, defendant was arrested in a separate incident, which we will refer to as the "fleeing and eluding case."

> Defendant ultimately was convicted in that case of operating a motor vehicle without a valid license, second or subsequent offense, MCL 257.904(3)(b), third-degree fleeing and eluding, MCL 257.602a(3), and resisting and obstructing a police officer, MCL 750.81d(1).[1]  Attorney Melissa Dykman was appointed to represent defendant both in this case, which we will refer to as the "drunk driving case," and the fleeing and eluding case.

The trial court in the drunk driving case revoked defendant's bond pursuant to MCR 6.106 in light of the new charges against defendant in the fleeing and eluding case. Six days later, on May 18, 2015, defendant failed to appear for a joint proceeding that was the final pretrial conference in the drunk driving case and the arraignment in the fleeing and eluding case. The trial court revoked defendant's bond and issued a bench warrant for his arrest.

In the drunk driving case, at defendant's insistence, Attorney Dykman filed a motion to suppress on behalf of defendant, contending in part that the traffic stop that led to his arrest was unlawful because the officer did not see defendant commit a traffic violation. Defendant argued that the evidence obtained from the improper stop should be suppressed, and that without such evidence, the case should be dismissed. The trial court denied the motion to suppress, ruling that the traffic stop was proper. Defendant then pleaded guilty to both charges in the drunk driving case.

Following defendant's guilty plea in the drunk driving case, another joint proceeding was held in the drunk driving case and the fleeing-and-eluding case. At that hearing, Judge Monton presiding, defendant requested appointment of substitute counsel to replace Attorney Dykman. The following discussion took place:

> *The Defendant*:  Yes, sir.  What everybody is not understanding is I didn't have nothing to do with that, and I've got witnesses and everything that, you know, I just need a chance to present them in court.
>
> *The Court*:  Okay.
>
> *The Defendant*:  I mean it's understandable why the officer, you know, was mistaken, you know, so I'm not pleading guilty to anything I didn't do, Your Honor.
>
> *The Court*:  Okay, that's fine.
>
> *Ms. Dykman*:  Your Honor?
>
> *The Defendant*:  And that's the reason why I also want to discharge her.  She's never once asked me, never gave me a chance to defend myself, she just wants me to plead guilty to this.
>
> *The Court*:  Well, you know, [defendant], on the other case that was set in front of Judge Nichols that you recently pled to, you basically said the same kind of thing, and then surprisingly enough on the day of trial you indicate that you want to plead guilty.  After we get all the jury here then you plead guilty.  I mean, you know, you're just, you're just unreasonable.
>
> *The Defendant*:  No, sir.

6

*The Court*:  No, I'm not appointing you another lawyer.  If you want to hire a lawyer, fine; you're just wasting taxpayer's money.

*The Defendant*:  Your Honor, what happened—

*The Court*:  You're welcome to go to trial and you're going to go to trial.

*The Defendant*:  Your Honor, what happened last time was I begged with Ms. Dykman to go over the prosecution's evidence with me.  The whole time I've been sitting—You've held me in jail without bond with no new charges, no nothing.  My bond is posted on all my charges.  You've held me in jail with no bond this whole time.

*The Court*:  There's a good reason why you're in jail.

*The Defendant*:  No, nobody had to come and get me or nothing like that.  I haven't ran.  You know, you've held me without bond.  I wasn't able to meet with her and go over the evidence they had with me, and I was blindsided by the prosecuting's [sic] in-car video which differs completely from the one I was given and I reviewed the first time.

*The Court*: Okay.

*The Defendant*: I was flabbergasted when I seen it because she never went over it with me.  If I had been able to get my own evidence and bring that into court.  The disk I have is completely different than what theirs is, but she wouldn't go over them with me.

*The Court*:  Okay. Let her speak.

*Ms. Dykman*:  I just, for the benefit of the record, he was given a copy; not only did he have a chance to review it; he was given the CD's [sic] months ago.  I asked him repeatedly if he had reviewed those, and so he did have a chance to review them.  We've talked about his case and I was prepared for trial.  So that's the only thing I'm going to say in reference to that, Your Honor.

*The Court*:  All right.

*The Defendant*:  Your Honor—

*The Court*:  Enough for today. You're going back to jail, and feel free to hire another lawyer; otherwise Ms. Dykman is going to do the best she can with however difficult you always appear to be.

> *The Defendant*:  What about the evidence I need to accumulate, Your Honor?

> *The Court*:  I don't represent you.  I'm the Judge on the case.  I'm not your lawyer.

> *The Defendant*:  Well she don't—

> *The Court*:  Ms. Dykman will do the—She always has—

> *The Defendant*:  She don't represent me, either, that's why I wanted another attorney; she don't represent me.

> *The Court*:  Feel free to—I'm not going to appoint someone else because someone else is going to have the same problem as she does.  I don't get these kinds of complaints about her.  Very, very rarely do I get any complaints about Ms. Dykman.  I think I'm getting a complaint from you because, you know, you're just very, very difficult to deal with.  That's the facts of life.

> *The Defendant*:  She's trying to plead me guilty to something I didn't do.

> *The Court*:  Well go to trial.  I don't want you to plead guilty.  If you want to go to trial I want you to go to trial, and we'll do that in two weeks.

Defendant was subsequently convicted after a jury trial in the fleeing-and-eluding case, pleaded guilty in the drunk driving case, and was sentenced in both the drunk driving case and in the fleeing and eluding case in a joint proceeding.  The trial court later granted defendant's motion to withdraw his guilty plea in this case (the drunk driving case), and a bench trial was held with Judge Corwin presiding.  At defendant's request, defendant represented himself with Attorney Dykman present as standby counsel.  The following exchange took place:

> *The Court*:  All right.  Let me back up a second.  Do you still want to represent yourself?

> *The Defendant*:  Absolutely.

> *The Court*:  Okay.

> *The Defendant*:  Your Honor, I would like to make right now a point on the record.  I've requested, I flat-out fired Ms. Dykman last year, over a year ago.

> *The Court*:  Okay.

> *The Defendant*:  I've requested umpteen times for another attorney.  I told Judge Monton last Tuesday I'm not voluntarily representing myself.  I begged him for another attorney.
>
> *The Court*:  Yes.
>
> *The Defendant*:  And he's just flat-out refused.  I've known guys that had four or five different attorneys.  He will not appoint me another attorney.
>
> *The Court*:  Okay.
>
> *The Defendant*:  And I've got all kinds of issues about the way this case has been handled, and he won't even listen to them.  He just keeps pushing Ms. Dykman on me.  I was forced to represent myself.  I'm ready to represent myself.  We will go through with this today because I want it heard in front of you, not in front of Judge Monton, so we will go through with this today.  I'm ready to represent myself.

During the trial, Officer Dornbos testified that he was on duty on January 16, 2015, at approximately 2:08 a.m., when he saw defendant's vehicle, which was traveling south on M-37, drive into the left-turn lane as if it were going to turn left, and then "continu[e] through the intersection making a wide, sweeping [right] turn."  Officer Dornbos followed the vehicle south on M-37, and saw it again veer into the left lane, and again turn right.  The officer therefore stopped defendant for improper lane use in violation of MCL 257.642.

When Officer Dornbos approached defendant's open driver's-side window, he immediately noticed "a strong odor of intoxicants."  Officer Dornbos testified that defendant had "glossy, wet eyes" and that defendant's speech was slow and slurred.  Defendant indicated that he did not have a driver's license, and the Law Enforcement Information Network (LEIN) verified that defendant's license was suspended.  Defendant stated that he was not able to perform any sobriety tests and was too drunk to drive.  Officer Dornbos testified that he also believed that defendant was too intoxicated to drive.  A blood alcohol test obtained by search warrant later indicated that defendant's blood alcohol content was .191 grams of alcohol per 100 milliliters of blood.

After the prosecution rested, defendant made an opening statement in which he argued, among other things, that he was stopped illegally, and that he would prove that Attorney Dykman and Judge Monton were in collusion to keep him incarcerated.  Defendant then stated that he wanted to call Attorney Dykman as his first witness.  The trial court stated:

> We are here today to determine whether or not you're not guilty or guilty of driving under the influence of alcohol and driving with a suspended license.

9

> We're not here today to litigate what you perceive as injustices regarding previous rulings of Judge Monton or whether or not you had effective assistance of counsel.

Defendant then submitted the video recording of the traffic stop.  The video shows a vehicle approaching the intersection where Officer Dornbos was parked, and shows the headlights of the vehicle veering to the left as it approaches the intersection, and then moving to the right to go through the intersection.  Next, the video shows the vehicle signaling right while again moving into the left lane and then again turning to the right from the left lane.

At the conclusion of the trial, Judge Corwin found defendant guilty of operating a motor vehicle while intoxicated and driving with a suspended license.  After the trial but before sentencing, Attorney Dykman petitioned the trial court to withdraw as counsel for defendant because defendant had filed a grievance against her.  Judge Corwin appointed attorney Rick Prysock to represent defendant.

(Mich. Ct. App. Op., ECF No. 25-21, PageID.1412-1417) (footnotes omitted).

In Petitioner's appeal of the fleeing and eluding conviction, the Michigan Court of Appeals

stated:

> In January 2015, defendant was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor, third offense, and operating a motor vehicle while his license was suspended, revoked, or denied, second or subsequent offense.  The trial court released defendant on bond while he awaited trial on the charges.  In March 2015, defendant was operating a pickup truck with tinted windows when a state trooper attempted to pull him over.  Defendant did not slow down and a pursuit took place, with defendant eventually driving into a wooded area.  The pickup truck became stuck, and the trooper, who had parked his cruiser outside of the wooded area, ran up to the truck.  The trooper smashed his flashlight against a window in the truck, creating holes sufficient for the trooper to see the driver.  Defendant then hit the accelerator, pulled out of the mire, and was able to escape in the truck.  Defendant, however, was subsequently apprehended, and the trooper identified defendant as the operator of the pickup truck that the trooper had pursued.

> On June 9, 2015, there was a hearing that encompassed both of the criminal cases against defendant, which we shall refer to as the "drunk driving case" and the "fleeing and eluding case."  The hearing entailed an arraignment relative to the fleeing and eluding case and, apparently, a status conference with respect to the drunk driving case.  The trial court noted that trial was scheduled for July 29, 2015, in the drunk driving case, which was to be presided over by another circuit court judge, as the trial court would not be available at that time.  Defendant's appointed counsel, who represented defendant in both cases, informed the trial court that the prosecution had made plea offers in the two cases, both of which defendant rejected, desiring instead to go to trial.  Defendant personally confirmed his position on the plea offers.

10

Defendant then expressed that he had asked counsel to file two motions in the drunk driving case, but she refused. Defendant's attorney responded by indicating that she had told defendant on multiple occasions that there was no legal basis for the motions. Counsel further stated that she could not file the motions in good faith. Defendant then began arguing that a police car video in the drunk driving case showed that there was no probable cause to pull defendant over and that defendant had not been read his chemical test rights. The trial court observed that appointed counsel was not defendant's slave and had no obligation to file frivolous motions. The court stated that defendant was free to hire an attorney who could bring the motions, but defendant replied that he lacked the funds to do so. Defense counsel then indicated that she was willing to discuss the matter further with defendant. The trial court noted that counsel was a "longtime" attorney who knew "criminal law pretty well." Defendant next stated that he wished to sit down with his attorney to review the video for purposes of the drunk driving case, at which point counsel asserted that the video was extremely long and that she had given a copy of the video to defendant two months earlier. The hearing then concluded.

On July 17, 2015, in the drunk driving case, defendant's attorney filed a motion to suppress the search and dismiss the charges, along with a motion in limine to exclude prior convictions and testimony concerning the preliminary breath test. On July 29, 2015, the scheduled day of trial in the drunk driving case, the circuit court granted the motion in limine, but denied the motion to suppress and dismiss, prompting defendant to enter a guilty plea that day. At the end of the plea hearing, the circuit court pointed out to defendant that his attorney had done a fine job advocating for defendant, but the circumstances were "basically beyond her control." Defendant responded, "Yes, sir, I realize that now."

On August 10, 2015, at a pretrial conference relative to the fleeing and eluding case, the prosecutor set forth a plea offer that had been made, and defense counsel indicated that, despite her recommendation to the contrary, defendant rejected the offer. Defendant personally expressed that he did not participate in the alleged offenses; therefore, he would not plead guilty. Defendant then stated that he wished to discharge counsel, as she had never given him a chance to defend himself and just wanted him to plead guilty. The trial court noted that defendant had voiced these complaints about counsel in the drunk driving case, but then he pleaded guilty. The court observed that defendant was "just unreasonable." The trial court firmly ruled that it would not be appointing defendant a new attorney and that defendant was simply attempting to waste taxpayer money. Defendant then began complaining about the police car video from the drunk driving case and how defense counsel had failed to go over the video with him, resulting in defendant being blind-sided by the video. Defense counsel adamantly informed the trial court that defendant had been given the video, that defendant indicated that he had reviewed it, and that she had talked to defendant in preparation of the trial, which never came to fruition. Defendant expressed that counsel did not represent him and that she was trying to have him plead guilty for crimes he did not commit. The trial court opined that defendant was very difficult to deal with and that any newly-appointed substitute counsel would run into the same problems with defendant that existed between

defendant and current counsel.  The trial court observed that appointed counsel was a competent attorney and that it was rare to receive complaints about her performance.

At a hearing on August 24, 2015, a couple of days before trial, defendant's attorney informed the trial court that defendant had told her several times that he now wanted to represent himself at the upcoming trial.  The trial court asked defendant if that was how he wished to proceed, and defendant responded, "I was hoping for another lawyer, but you denied me that, so I'll represent myself."  The court advised him that he should allow appointed counsel to continue representing him, as defendant did not have the training and experience that counsel had in the law. The trial court also advised defendant that it would be a serious mistake for him to represent himself and that counsel had handled many trials. Despite the court's warnings, defendant expressly indicated that he wished to represent himself at trial. The trial court revisited the issue concerning defendant's request for substitute counsel, touching on memories it had in handling part of the drunk driving case, along with information gleaned from reviewing the transcripts in that case. The court noted that defendant had complained at length about counsel in the drunk driving case, yet defendant ended up pleading guilty and then essentially conceded that counsel had performed well.  The trial court reiterated, "I believe that no matter who I appoint for you, you would be unhappy." The court directed appointed counsel to be present at trial to operate as standby counsel, so as to be available to defendant for any requested assistance, although the court emphasized its view that the better course of action for defendant would be to allow counsel to simply conduct the trial.  Defendant was in agreement with the standby arrangement.

On the day of trial, August 26, 2015, the trial court again advised defendant that there were big risks to representing himself, including a "lack of knowledge of the law and procedure" and an emotional entanglement that might prevent the exercise of objective and good judgment.  The trial court noted that it had informed defendant of the dangers of self-representation at the prior proceeding.  The court observed that if you have a medical problem, you go to a doctor, "and if you have a legal problem you seek a lawyer."  The court as much as pleaded with defendant to allow counsel to conduct the trial, while acknowledging that defendant had the constitutional right to represent himself.  The following colloquy then occurred:

> *The court*.  [H]aving said all that, is it still your wish to proceed to represent yourself during the trial?
>
> *The defendant*.  Yes, sir.

The trial court next informed defendant of the charges against him and the maximum punishment for each offense, warning him that a conviction might result in consecutive sentences, given that defendant was out on bond when the charged crimes took place.  The court asked defendant if he understood the charges and the maximum penalties, and defendant replied, "Yes, sir."  The trial court next discussed the latest plea offer made by the prosecution, obtaining defendant's confirmation that

defendant was rejecting the offer.  The jury trial was then conducted, and defendant was found guilty as charged.  He now appeals as of right.

 (Mich. Ct. App. Op., ECF No. 25-19, PageID.898-901) (footnotes omitted).

Although Petitioner disagrees heartily with the court of appeals conclusions, he does not claim that the facts described by the court of appeals are unreasonable on the record.  Indeed, Petitioner's factual statements are generally consistent with the statements offered by the appellate court.

**B.**      **AEDPA standard**

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the

Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**C.**           **Petitioner's claims**

1.           Unlawful pretrial detention (habeas ground I)

Petitioner raised this claim in his appeal of his drunk driving case.  In addressing this issue,

the Michigan Court of Appeals stated:

> Defendant first contends, both through appellate counsel and in his Standard 4 brief, that his bond was improperly revoked, resulting in a denial of substantive due process.  We disagree.
>
> As an initial matter, this issue is moot.  "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004).  In this case, defendant was initially free on bond in the drunk driving case, but the trial court revoked his bond after defendant was arrested in connection with the fleeing and eluding case, and then failed to appear for a hearing.  Defendant has now been convicted and sentenced to a term of incarceration. It is not possible to reinstate his pretrial bond.  Therefore, this issue is moot. *Id.*

(Mich. Ct. App. Op., ECF No. 25-21, PageID.243-44.)

Petitioner's claim offers no ground for habeas relief from this Court.  Petitioner has been

convicted.  He is serving his sentence.  This Court cannot remedy Petitioner's pretrial detention even

if it were unlawful.  Moreover, unlawful detention does not void a subsequent conviction. *Gerstein*

*v. Pugh*, 420 U.S. 103, 119 (1975); *see also Murphy v. Hunt*, 455 U.S. 478, 481 n.5 (1982) ("[I]t

cannot be said as a matter of federal law that a decision holding that Hunt was unconstitutionally

denied bail prior to trial will have any consequences . . . after conviction.").  Indeed, at this point,

Petitioner would not benefit from an "undoing" of his pretrial detention because he has been given

credit against his drunk driving sentence for every day he sat in jail pending trial (and the days he

sat in prison following his convictions and before he was tried and resentenced after he withdrew

his guilty plea).

Petitioner has failed to show that the Michigan Court of Appeals' determination of mootness is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on the claim.

>        2.        Ineffective assistance of counsel in coercing Petitioner's plea
>                  (habeas ground II)

Petitioner contends that, at the time he was represented by counsel in the drunk driving case, his counsel rendered ineffective assistance. He states that she effectively colluded with the trail court against him. Petitioner further claims that counsel's actions coerced him into entering a plea.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance claims relating to his drunk driving case. The court applied the following standard:

16

> "[T]o find that a defendant's right to effective assistance of counsel was so undermined that it justifies reversal of an otherwise valid conviction, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "The defendant must overcome the presumption that the challenged action could have been sound trial strategy." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). To show prejudice, the defendant "must show a reasonable probability that the outcome would have been different but for counsel's errors." *Id*. at 486. "Effective assistance of counsel is presumed," and "[t]he defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77.

(Mich. Ct. App. Op., ECF No. 25-21, PageID.1423.)  Although the court of appeals relied upon state authority, the standard the court applied is functionally identical to, and therefore entirely consistent with, the *Strickland* standard.  The only question that remains is whether the state appellate court applied the standard reasonably.

When a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals concluded that Petitioner had failed to demonstrate any prejudice resulting from his counsel's alleged efforts to coerce a guilty plea.  That conclusion

17

necessarily follows from the fact that Petitioner was permitted to withdraw the plea.[2]  Any prejudice that accrued to Petitioner by virtue of his plea was eliminated when it was withdrawn.  Accordingly, Petitioner has failed to demonstrate that the Michigan Court of Appeals rejection of his ineffective assistance of counsel claim is contrary to, or an unreasonable application of, *Strickland*.

> 3.     Judicial bias (habeas ground III)

Petitioner next contends that the judge who presided over his plea in the drunk driving case, his trial in the fleeing and eluding case, and his initial sentences in both cases was biased against him.  The Michigan Court of Appeals rejected that argument:  "After careful review, we reject all of these frivolous arguments, given that they are wholly unsupported by the record and or the law . . . ."  (Mich. Ct. App. Op., ECF No. 25-19, PageID.908.)

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' [citation omitted], before a judge with no actual bias against the defendant or interest in the outcome of his particular case."  *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997).  However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias."  *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases:  (1) those cases in which the judge "has a direct, personal, substantial

---

[2] Petitioner's withdrawal of the plea had nothing to do with any failure on counsel's part.  Petitioner's counsel and the prosecutor stipulated to the withdrawal of the plea because the trial court had failed to advise Petitioner of the maximum penalty associated with the charges to which he pleaded guilty.

pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927);

(2) certain contempt cases, such as those in which "the trial judge permitted himself to become

personally embroiled with the petitioner," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also*

*Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the

case as a prosecutor, *Williams*, 136 S. Ct. at 1905.  The courts indulge "a presumption of honesty

and integrity in those serving as adjudicators[.]"  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) 421

U.S. at 47.  "The presumption of impartiality stems not merely from the judicial-bias caselaw, *see*

[*Withrow*], but from the more generally applicable presumption that judges know the law and apply

it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even

more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30-31 (1992);

*United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)."  *Coley v. Bagley*, 706 F.3d 741, 751

(6th Cir. 2013).

In *Liteky v. United States*, 510 U.S. 540 (1994),[3] the Supreme Court described the showing

Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality
> motion.  *See United States v. Grinnell Corp.*, 384 U.S. at 583.  In and of themselves
> (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot
> possibly show reliance upon an extrajudicial source; and can only in the rarest
> circumstances evidence the degree of favoritism or antagonism required (as discussed
> below) when no extrajudicial source is involved.  Almost invariably, they are proper
> grounds for appeal, not for recusal.  Second, opinions formed by the judge on the
> basis of facts introduced or events occurring in the course of the current proceedings,
> or of prior proceedings, do not constitute a basis for a bias or partiality motion unless
> they display a deep-seated favoritism or antagonism that would make fair judgment
> impossible.  Thus, judicial remarks during the course of a trial that are critical or
> disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do
> not support a bias or partiality challenge.  They *may* do so if they reveal an opinion

---

[3] *Liteky* is a case that addresses the statutory recusal standard for federal judges.  The Sixth Circuit
has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the
Due Process Clause.  *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).

that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-556 (emphasis in original).

The Michigan Court of Appeals, in a one-sentence analysis, rejected Petitioner's bias argument as frivolous. But the fact that the analysis is curt does not make it unreasonable. The record amply supports the conclusion that the trial judge's statements throughout the course of Petitioner's criminal proceedings were "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and, thus, "do not constitute a basis for a bias or partiality challenge." *Liteky*, 510 U.S. at 555. The court of appeals' rejection of Petitioner's claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law.

4.      No hearing regarding substitution of counsel (habeas ground IV)

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const., Amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).

"[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153,

159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).  "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'"  *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").  Accordingly, an indigent defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution" of counsel.  *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *accord Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011).

There is little question that Petitioner and his counsel disagreed regarding the proper course of action in defending against the charges in the drunk driving case.  On June 9, 2015, at the arraignment on the fleeing and eluding case, Petitioner indicated that he wanted counsel to file motions in the drunk driving case, but she would not.  Counsel indicated she did not feel the motions had merit; however, by the end of the hearing, she indicated she would review the matters with Petitioner again.

At the final pretrial conference in the drunk driving case, on July 13, 2015, counsel indicated she was proceeding with the motions.  (Final Conf. Tr., ECF No. 25-4, PageID.372.)  On July 29, 2015, the trial court heard the motions.  (Mot. Hr'g Tr., ECF No. 25-6.)  The court concluded the motions lacked merit and denied them.  (*Id.*, PageID.401.)  Shortly thereafter, Petitioner entered his plea on the drunk driving charge.  As part of the plea colloquy, Petitioner acknowledged that his attorney did a fine job advocating on his behalf, but the circumstances were simply beyond her

21

control.  (Plea Tr., ECF No. 25-7, PageID.416.)  At the time Petitioner entered his plea, there was no hint of "good cause" to warrant substitution of counsel.

Two weeks later, at the August 10, 2015 final pretrial for the fleeing and eluding case, Petitioner felt differently.  Counsel was encouraging Petitioner to plead guilty because the prosecutor was offering a 36-month cap on the minimum and a recommendation that the sentence run concurrently with the drunk driving sentence.  (Final Pretrial Conf. Tr., ECF No. 25-8, PageID.422-423.)  Petitioner insisted he did not commit the offense and, therefore, would not plead guilty.  (*Id.*, PageID.423.)  Moreover, because counsel was encouraging the plea, Petitioner voiced his desire to discharge her.  (*Id.*)

That was the only disagreement Petitioner identified with counsel regarding the fleeing and eluding case: she advised him to plead guilty.  It is noteworthy that, if Petitioner had stuck with his plea on the drunk driving case and entered the plea on the fleeing and eluding case, he might well be out of prison by now.  It is hard to fault counsel for advising that course of action.  Although Petitioner did not identify any other problem with counsel regarding the fleeing and eluding case, he did explain that he was, by then, convinced that counsel's representation fell short on the drunk driving case.  (*Id.*, PageID.424-425.)  The trial court informed Petitioner that no other counsel would be appointed because any other counsel would most likely advise Petitioner the same way Petitioner's present counsel had.  (*Id.*, PageID.424,426.)

On August 24, 2015, Petitioner's counsel informed the court that Petitioner wanted to represent himself, but that he wanted counsel to be there to assist.  (Conf. Tr., ECF No. 25-17, PageID.842-843.)  On August 26, 2015, at Petitioner's fleeing and eluding trial, Petitioner continued to insist on not proceeding with his appointed counsel.  The trial court removed Petitioner, his counsel, and the prosecutor to a courtroom away from the potential jurors and explained to Petitioner

the consequences of representing himself.  The court asked Petitioner if he still wanted to represent himself.  Petitioner responded: "Yes, sir."  (Trial Tr. ECF No. 25-9, PageID.432.)  Petitioner's counsel served in a standby role and provided advice and assistance to Petitioner during the trial.

Although Petitioner now offers an extensive list of counsel's errors, the only "good cause" he offered to the court was his complaint that she thought Petitioner should plead guilty.   Petitioner, therefore, failed to demonstrate any "conflict of interest, . . . complete breakdown in communication or . . . irreconcilable conflict with his attorney[,]" *Wilson*, 761 F.2d at 280, that would have compelled the trial court to provide substitute counsel.

The Michigan Court of Appeals considered Petitioner's claim regarding substitution of counsel against the following standard:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced.  Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process.  Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest.  A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause.  Likewise, a defendant's general unhappiness with counsel's representation is insufficient.

(Mich. Ct. App. Op., ECF No. 25-19, PageID.904.)  Although the court of appeals derived that standard from state authorities, the standard is consistent with clearly established federal law.

The court reviewed the five specific grounds Petitioner offered to support his claim that he had irreconcilable differences with his counsel.  The court noted that three of the five grounds related to the drunk driving case, not the fleeing and eluding case.  The fourth ground offered was counsel's failure to obtain the evidence Petitioner needed to defend against the fleeing and eluding charges. The appellate court found no evidence to support Petitioner's argument: "There is nothing in the transcript remotely suggesting that counsel had failed to obtain pertinent evidence or that defendant

23

even accused counsel of failing to do so." (*Id.*, PageID.905.)  Petitioner has failed to offer any record evidence to the contrary.  The fifth ground was counsel's recommendation that Petitioner plead guilty.  The court of appeals concluded that sound recommendation "did not warrant substitution of counsel."  (*Id.*)

The court of appeals' factual determinations regarding the showing Petitioner made at the pretrial conferences is well-supported by the record.  The court of appeals' determination that Petitioner's showing did not warrant substitution of counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

5.    Prosecutorial misconduct (habeas ground V)

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).  Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law."  *Texas v. Cobb*, 532 U.S. 162, 172 (2001) (quotation and citation omitted).

When a criminal defendant claims that his confession was rendered involuntary by police coercion, the court must inquire whether, considering the totality of the circumstances, the conduct

of law enforcement officials overbore the will of the accused.  *See Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973).  A suspect's state of mind, standing alone, cannot render a statement involuntary.  Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.  *See Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986).  Typically, findings of coercive police conduct involve brutality or threats of physical coercion.  *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991) (threats of physical violence); *Greenwald v. Wisconsin*, 390 U.S. 519 (1968) (defendant interrogated for eighteen hours without food or sleep while on medication); *Beecher v. Alabama*, 389 U.S. 35 (1967) (gun held to head of wounded suspect to extract confession); *Cooper v. Scroggy*, 845 F.2d 1385 (6th Cir. 1988) (officer struck defendant, failed to take steps to change coercive environment, and other detective threatened defendant).  Nevertheless, a confession may be rendered involuntary if it is the product of psychological pressure or coercion sufficient to overbear the will of the accused.  *See Fulminante*, 499 U.S. at 287-88.  Among the circumstances to be reviewed by the habeas court are "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health."  *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted).

Although a detained person has the right to remain silent, he or she is not required to do so. In choosing to speak, however, the person is choosing to waive the *Miranda* rights.  The waiver of *Miranda* rights must be done knowingly, voluntarily, and intelligently.  *Miranda*, 384 U.S. at 444. The inquiry "has two distinct dimensions."  *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  First, the waiver must have been the product of a free and deliberate choice, without coercion, intimidation, or deception.  *Moran*, 475 U.S. at 421.

25

Second, the waiver must have been made with a full awareness of the right being abandoned and the consequences of the decision to abandon the right.  *Id.*  An individual need not know every possible consequence of a waiver, however.  *Spring*, 479 U.S. at 574.  Instead, the requisite inquiry is "whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'"  *Id.*  The waiver of *Miranda* rights, however, may be implicit.  *See Berghuis v. Thompkins*, 560 U.S. 370, 383-84 (2010) (speech and conduct that occurred after 2 hours and 45 minutes of silence in response to questioning amounted to an implicit waiver) (citing *North Carolina v. Butler*, 441 U.S. 369, 379 (1979) (holding that courts can infer a waiver of *Miranda* rights "from the actions and words of the person interrogated")).

Police cannot force a waiver by disregarding a detained person's assertion of his or her *Miranda* rights.  When a suspect who is in custody has asked for a lawyer, the suspect must not be subjected to further interrogation until a lawyer has been provided, unless the suspect initiates a discussion.  *See Edwards v. Arizona*, 451 U.S. 477. 484 (1981); *Arizona v. Roberson*, 486 U.S. 675, 680 (1988) (citing *Miranda*, 384 U.S. at 474).  The rule is designed to prevent police "'badgering' or 'overreaching' – explicit or subtle, deliberate or unintentional – [that] might otherwise wear down the accused and persuade [the suspect] to incriminate himself."  *Smith v. Illinois*, 469 U.S. 91, 98 (1984).  Determining whether a custodial statement is improper after the suspect has invoked his right to counsel requires a two-part inquiry:

> First, courts must determine whether the accused actually invoked his right to counsel. . . . Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Smith*, 469 U.S. at 95.  *See also Van Hook v. Anderson*, 488 F.3d 411, 416 (6th Cir. 2007) (en banc).  Under the first inquiry, the court must determine whether the suspect unambiguously

requested counsel.  *Van Hook*, 488 F.3d at 414 (citing *Davis v. United States*, 512 U.S. 452, 458 (1994)).

Moreover, the prosecutor may not comment on the silence of a detained person who has asserted his or her *Miranda* rights.  In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the Supreme Court considered whether a defendant's silence during a custodial interrogation could be used, not as evidence of guilt, but to impeach the defendant's testimony at trial.  The Court held "that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment."  The theory underlying *Doyle* is that, while *Miranda* warnings contain no express assurance that silence will carry no penalty, "such assurance is implicit to any person who receives the warnings."  *Id.* at 618.  On this reasoning, the Court concluded that it would be fundamentally unfair first to induce a defendant to remain silent through *Miranda* warnings and then to penalize the defendant who relies on those warnings by allowing the defendant's silence to be used to impeach an exculpatory explanation offered at trial.  *Id.*  Where a defendant has not remained silent, however, neither *Doyle* nor *Miranda* are implicated when a prosecutor comments on what a defendant did not say.

Here, Petitioner did not remain silent.  The Michigan Court of Appeals described his conduct as follows:

> The police officer testified that after defendant was arrested, he questioned defendant at the county jail after reading defendant his *Miranda* rights.  The officer asserted that defendant claimed that "he was not the one driving the truck."  According to the officer, defendant stated that he had an alibi.  The officer then testified, "he told me that he was not willing to provide me with any names or locations that he was at at the time."  The officer indicated that defendant informed him that defendant had no obligation to divulge the nature of his alibi.  Defendant then asked whether the officer could get the charges dropped if defendant gave him specifics regarding the alibi.  The officer responded that he would first have to investigate the alibi, at which point defendant expressed that he needed an attorney.  The interrogation then ceased.

(Mich. Ct. App. Op., ECF No. 25-19, PageID.906-907.)  At trial, Petitioner presented a very specific alibi defense based on testimony from his girlfriend at the time of the alleged crime and a former girlfriend.[4]  The prosecutor "adamantly commented on defendant's failure to tell the officer the[] details during the interrogation and on defendant's affirmative statement that he would not provide the officer with details . . . ."  (*Id.*, PageID.907.)  The prosecutor argued that the alibi was, for that reason, not credible and that Petitioner had "concocted the phony alibi" after the fact.  (*Id.*)

The court of appeals relied on clearly established federal law to reject Petitioner's claim:

In *Berghuis v Thompkins*, 560 US 370, 381-382; 130 S Ct 2250; 176 L Ed 2d 1098 (2010), the United States Supreme Court held:

> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously.  A requirement of an unambiguous invocation of rights results in an objective inquiry that avoids difficulties of proof and . . . provides guidance to officers on how to proceed in the face of ambiguity.  If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression if they guess wrong.  Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity.  Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights might add marginally to *Miranda*'s goal of dispelling the compulsion inherent in custodial interrogation.  But as *Miranda* holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process.
>
> Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police.  Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning.  Here he did neither, so he did not invoke his right to remain silent.  [Citations, quotation marks, and alteration brackets omitted; ellipsis in original.]

_____

[4] Petitioner presented the alibi at his preliminary examination as well.  (Prelim. Exam. Tr., ECF No. 25-2.)  Indeed, because his girlfriend had moved out of state, and could not be subpoenaed for trial, her preliminary examination testimony was read into the record at Petitioner's trial.

In the instant case, once defendant validly waived his right to remain silent by participating in the interrogation, the officer was permitted to continue to interrogate defendant until defendant unambiguously asserted his right to remain silent. Defendant simply did not invoke his right to remain silent and end the interrogation prior to stating that he had an alibi and that he would not share the details of the alibi with police. Indeed, defendant thereafter continued to freely speak with the officer, with the interrogation only ending when defendant later indicated that he needed a lawyer. Moreover, the officer's testimony and the prosecutor's remarks concerned defendant's actual statements, not his mere silence. For that reason, the facts are not similar to those in cases where the defendant's silence had little or no probative value because it occurred after the defendant received *Miranda* warnings and reflected nothing more than the exercise of the arrestee's right to remain silent. See *Doyle v Ohio*, 426 US 610, 617-618; 96 S Ct 2240; 49 L Ed 2d 91 (1976); see also *Shafier*, 483 Mich at 215-217 (relating that the defendant made no statements when arrested and that the prosecutor relied on his silence in the face of the accusations against him as evidence).

(Mich. Ct. App. Op., ECF No. 25-19, PageID.907-908.)  The appellate court's analysis is entirely consistent with—and not contrary to, or an unreasonable application of—the clearly established federal law cited above.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

6.    Judicial participation in plea negotiations and vindictive sentencing (habeas ground VI)

Petitioner next argues that Judge Monton improperly participated in plea bargaining when he agreed to cap Petitioner's minimum drunk driving sentence at 2 years.  Petitioner also states that Judge Monton was vindictive when he sentenced Petitioner to a minimum of 46 months on the fleeing and eluding charge.  Petitioner claims Judge Monton punished Petitioner for exercising his right to trial on that charge.  The Michigan Court of Appeals rejected those claims as frivolous and wholly unsupported by the record and the law.  (Mich. Ct. App. Op., ECF No. 25-19, PageID.908.)

Petitioner relies on state law to support his claim that Judge Monton impermissibly participated in plea bargaining.  (Pet'r's Memo. of Law, ECF No. 1, PageID.76.)  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of

constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Here, the Michigan Court of Appeals considered and rejected Petitioner's state law position.[5] It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at, 76; *Estelle*, 502 U.S. at 67-68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

Petitioner's further suggestion that Judge Monton's sentence evidences vindictiveness because it is longer than the concurrent sentences Petitioner would have faced if he entered a plea in both cases simply ignores the nature of plea bargaining.  As the Supreme Court explained in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978):

> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial.  *Brady v. United States, supra*, 397 U.S., at 752.  Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent

---

[5] Petitioner's statement of the law is out of date.  A Michigan judge may now play a limited role in plea negotiations.  In *People v. Cobbs*, 505 N.W.2d 208 (1993), the Michigan Supreme Court authorized a plea agreement by which a judge indicates a preliminarily non-binding sentence, but if the defendant subsequently pleads guilty, and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea.

> choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation.  397 U.S., at 758.  Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process.  By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.  See ABA Project on Standards for Criminal Justice, Pleas of Guilty § 3.1 (App. Draft 1968); Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv.L.Rev. 564 (1977).  *Cf. Brady v. United States, supra*, at 751; *North Carolina v. Alford*, 400 U.S. 25.
>
> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin v. Stynchcombe, supra*, 412 U.S., at 31.  It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Bordenkircher*, 434 U.S. at 363-64.  It is not surprising at all that one who foregoes the burdens of the bargain foregoes the benefits as well.  Petitioner was well-advised of the fact that he was subjecting himself to a risk of a harsher sentence when he opted to proceed to trial.  (Trial Tr., ECF No. 25-9, PageID.432-434.)  Petitioner's realization of that risk in the form of a harsher sentence—even a significantly harsher sentence—does not support his claim of vindictiveness.  It reflects his poor choice.

Petitioner has failed to show that the state appellate court's rejection of his vindictiveness claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

### 7.    Denial of the motion to suppress (habeas issue VII)

It is possible to interpret Petitioner's argument regarding this issue as a claim that the Court should not have admitted the video evidence of sweeping right turns from the left-hand lane.  (Pet'r's Memo. of Law, ECF No. 1-1, PageID.111-113.)  The Court notes it was Petitioner who introduced

that portion of the video evidence at trial.  To the extent Petitioner now contends the Court should not have admitted the video evidence Petitioner offered, his claim is frivolous.

The crux of Petitioner's argument is that the trial court should have suppressed all of the evidence obtained in connection with the traffic stop because Officer Dornbos did not have probable cause to stop Petitioner.  Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824.

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), the

Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error."  *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down.  Rather, Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration.  The transcript demonstrates that the trial court fully and thoughtfully considered Petitioner's motion to suppress.  The Michigan Court of Appeals reviewed Petitioner's appellate arguments on the issue and determined that they lacked merit.  Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application.  Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard.  *Gilbert*, 763 F.2d at 824.  Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

8.    Proportional sentence

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v.*

33

*Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner attacks his sentences as disproportionate, a state-law concept explained in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), and unreasonable under *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017).  In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion.  *Steanhouse*, 902 N.W.2d at 335.  The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis.  *Id.* at 335-37.  In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.  Clarifying its holding, the *Steanhouse* court expressly rejected adopting factors used by the federal courts.  *Id*.

*Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a

matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus.").  Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

Moreover, Petitioner's claims that his term-of-years sentence is unreasonable and disproportionate are not otherwise cognizable as a constitutional challenge.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 30 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v.*

*Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.[6] Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner also claims that Judge Corwin, who imposed his drunk driving sentence after trial, was vindictive.  Petitioner's measure of vindictiveness is, again, a comparison between the sentence imposed by Judge Corwin and the sentences he was offered during plea negotiations or the sentence initially imposed after he entered his plea.  For the reasons stated above, the comparison simply does not support his claim.

Petitioner has failed to show that the state appellate court's rejection of his sentencing challenges are contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief.

As a final note, based on the "earliest release date" and "maximum discharge date" reported by Respondent on the MDOC's Offender Tracking Information System (OTIS), *see* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=18217 (visited Jan. 11, 2021), it does not appear that Respondent has given effect to the trial court's direction that Petitioner's sentence in the fleeing and eluding case be served consecutively to his sentence in the drunk driving case.  Perhaps there are state law reasons for disregarding the trial court's direction regarding consecutive sentences.

---

[6] The maximum penalty, as enhanced under the habitual offender statute, could have been life imprisonment.  *See* MCL §§ 257.625, 769.12.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: February 10, 2021                              /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).